**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

BERNARD COMPO,

Plaintiff,

8:18-cv-614 (BKS/DJS)

v.

RIVER REAL ESTATE DEVELOPMENT, LLC,

Defendant.

---

RIVER REAL ESTATE DEVELOPMENT, LLC,

Third-Party Plaintiff,

v.

CLAXTON-HEPBURN MEDICAL CENTER,

Third-Party Defendant.

---

**Appearances:**

*For Plaintiff:*
H. Larry Vozzo
Vozzo Law Office
443 North Franklin St., Suite 220
Syracuse, NY 13204

Michael A. Schwartz
Disability Rights Clinic
Office of Clinical Legal Education
Syracuse University College of Law
Dineen Hall – Suite 200
950 Irving Avenue
Syracuse, NY 13244

*For Defendant and Third-Party Plaintiff River Real Estate Development, LLC:*
Warren Holland
Goldberg, Miller & Rubin, P.C.
121 South Broad Street
Philadelphia, PA 19107

*For Third-Party Defendant Claxton-Hepburn Medical Center:*
Jeffrey E. Hurd
Steven V. DeBraccio
Burke, Scolamiero & Hurd, LLP
7 Washington Square
Albany, NY 12205

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff Bernard Compo brings this action against Defendant River Real Estate Development, LLC ("River Real Estate") alleging violations of Title III of the Americans with Disabilities Act (the "ADA") and the Executive Law of the State of New York, New York State Human Rights Law ("NYHRL"), as well as a claim for negligence under state law. (Dkt. No. 1). River Real Estate has also brought a claim against third-party defendant Claxton-Hepburn Medical Center ("Claxton-Hepburn") for indemnification with respect to certain of Plaintiff's claims. (Dkt. No. 30). Presently before the Court is Plaintiff's motion for partial summary judgment against River Real Estate, (Dkt. No. 51), River Real Estate's motion for partial summary judgment against Plaintiff, (Dkt. No. 53), and Claxton-Hepburn's motion for summary judgment against River Real Estate, (Dkt. No. 48). For the following reasons, River Real Estate's motion is granted, Claxton-Hepburn's motion is granted, and Plaintiff's motion is denied.

## II. FACTS[1]

Plaintiff is a 54-year old paraplegic who uses a wheelchair. (Dkt. No. 51-2, at ¶¶ 1, 4; Dkt. No. 54, at ¶¶ 1-2, 4). For eight years, Plaintiff has been treating with Dr. Juan-Diego Harris, a pain management specialist with offices at 305 Main Street, Ogdensburg, New York 13669 (the "Premises"). (Dkt. No. 51-2, at ¶¶ 8-9; Dkt. No. 54, at ¶¶ 6-9). River Real Estate owns and operates the Premises, and leases approximately half the building to Claxton-Hepburn for its use. (Dkt. No. 51-2, at ¶¶ 5, 7; Dkt. No. 54, at ¶¶ 5-9). Dr. Harris's office is in Claxton-Hepburn's portion of the building. (Dkt. No. 49, at ¶ 8). The remainder of the Premises contains the medical practice of Dr. Christopher Brandy, the sole owner of River Real Estate, who uses the Premises to see patients and, between August 2015 and February 2016, was at the Premises in person four to five days per week. (Dkt. No. 51-2, at ¶¶ 6, 18-19, 22; Dkt. No. 54, at ¶¶ 6-9, 18-25). Pursuant to the lease agreement between River Real Estate and Claxton-Hepburn, River Real Estate is responsible for maintaining the exterior of the Premises, including sidewalks and parking lots, while Claxton-Hepburn is responsible for maintaining its own medical offices, including the exterior doors thereto. (Dkt. No. 48-1, at ¶¶ 3-4; Dkt. No. 49, at ¶¶ 2-5). At his deposition, Dr. Brandy acknowledged that it is River Real Estate's responsibility to maintain the exterior of the premises in a safe condition. (Dkt. No. 51-2, at ¶ 21; Dkt. No. 54, at ¶¶ 18-25).

Plaintiff accessed Dr. Harris's office by way of a wheelchair-accessible sidewalk or ramp,[2] which provided the only path between Dr. Harris's office and the parking lot. (Dkt. No.

[1] The facts stated herein are drawn from the parties' statements of undisputed material facts submitted in support of their respective motions for summary judgment, (Dkt. Nos. 48-1, 51-2, 53-1), as well as their responses to other parties' statements of material facts, (Dkt. Nos. 49, 54, 55-1), to the extent the facts set forth therein are well-supported by pinpoint citations to the record, as well as the exhibits cited therein to the extent they are admissible as evidence. In considering the parties' cross-motions for summary judgment, the Court "in each case constru[es] the evidence in the light most favorable to the non-moving party." *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 621-22 (2d Cir. 2008); *see also Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993).

[2] Plaintiff characterizes the wheel-chair accessible path as a "ramp," while River Real Estate characterizes it as a "sidewalk." (Dkt. No. 51-2, at ¶¶ 10, 12-14; Dkt. No. 54, at ¶¶ 10-14). Throughout this decision, the Court will refer

51-2, at ¶ 10; Dkt. No. 54, at ¶ 10). Sometime in or prior to August 2015, someone employed by or affiliated with River Real Estate placed a 55-gallon barrel that was cut in half and served as a planter on a portion of the ramp. (Dkt. No. 51-2, at ¶ 26; Dkt. No. 54, at ¶ 26). At the point where the planter was placed, the ramp was elevated several inches[3] above the level of the parking lot. (Dkt. No. 51-2, at ¶ 13). Plaintiff contends that the placement of the planter "some distance from the wall" "substantially narrowed" the width of the wheelchair ramp, leaving the ramp just barely wider than the approximately 24-inch width of his wheelchair. (*Id.* at ¶¶ 11, 14). In his deposition, Plaintiff did not recall when he first noticed the planter or whether he ever had difficulty navigating around it prior to August 2015. (Dkt. No. 51-8, at 92-93). However, he did recall complaining about the planter to Dr. Harris and his secretary several times, and warning them that the placement of the planter was "too close to the curb," that "it's hard for people to get up through there with walkers," and that "people are going to fall and apt to hurt themselves if they have a bad equilibrium problem." (*Id.* at 93-97). Despite Plaintiff's complaints, however, nothing was done to change the condition of the ramp and planter. (*Id.* at 97).

On or about August 25, 2015, Plaintiff used the ramp to access Dr. Harris's office for a medical appointment. He testified that, when approaching the office, he had "just" enough room to maneuver past the planter in his wheelchair, that it was a "tight fit," that the "right tire of [his] wheelchair . . . rubbed up against the [planter]," and that he had to "go slow and look to [his] left

---

to the path as a "ramp," but the question of whether the path is best characterized as a "ramp" or a "sidewalk" is immaterial to the Court's decision.

[3] Plaintiff cites only to his own deposition testimony to support his assertion that the ramp was elevated 8 inches above the level of the parking lot, (Dkt. No. 51-2, at ¶ 13 (citing Dkt. No. 51-8, at 80)), and does not provide any measurements, expert testimony or other evidence to support that estimate. In its response, River Real Estate asserts that "[b]ecause the height of the curb was not measured before the lot was resurfaced, the height of the curb on the date of the accident is unknown," but does not specifically dispute Plaintiff's estimate or cite to any contrary evidence. (Dkt. No. 54, at ¶ 13). In any event, the precise amount of elevation is immaterial to the Court's decision, as it is undisputed that, at the time of Plaintiff's accident, the ramp was not level with the parking lot at the point where the planter was placed.

to make sure [he] was going to stay on the curb." (Dkt. No. 51-8, at 88, 109-110; Dkt. No. 51-13, at ¶ 8). Later, after exiting Dr. Harris's office following his appointment, Plaintiff again attempted to maneuver his wheelchair through the narrowed space left by the placement of the planter. (Dkt. No. 51-2, at ¶ 10-11). According to Plaintiff's testimony, he "wasn't paying a hundred percent attention," as he was looking for the van that would transport him back to his residence. (Dkt. No. 54, at ¶ 12 (citing Dkt. No. 51-8, at 109-10); *see also* Dkt. No. 51-8, at 130-31). As Plaintiff attempted to navigate past the planter, the right wheel of his wheelchair fell off the ramp, tipping his wheelchair over and causing him to fall out of his wheelchair and hit his head on the pavement. (Dkt. No. 51-2, at ¶ 12; Dkt. No. 54, at ¶ 12). Plaintiff was knocked unconscious when he fell, (Dkt. No. 51-8, at 111), suffered a concussion, and experienced symptoms that lasted for months after his fall, including migraine headaches, blurred vision, and pain in his neck, back and upper extremities. (*Id.* at 45-63). Aside from this August 2015 incident, Plaintiff has not experienced any other accidents in which he fell out of his wheelchair, either at the Premises or otherwise. (*Id.* at 60).

Plaintiff testified that, when he returned to the Premises for a follow-up appointment with Dr. Harris several days after his accident, the planter had been moved so that it was "pushed back up against the wall," and he was able to successfully navigate around it, but that it was "still close." (*Id.* at 115-16). Then, at some point after Plaintiff's accident (and possibly after this litigation was initiated), Dr. Brandy, apparently acting on the advice of his counsel, removed the planter entirely. (Dkt. No. 51-2, at ¶ 27; Dkt. No. 54, at ¶ 27; Dkt. No. 51-9, at 41-42, 66). Furthermore, since Plaintiff's accident, asphalt has been added to eliminate the gap between the wheelchair ramp and the parking lot that allegedly caused Plaintiff's wheelchair to fall off the ramp and tip over. (Dkt. No. 48-1, at ¶¶ 35-36 (citing Dkt. No. 51-8, at 87-88, 91, 108; Dkt. No.

51-9, at 98); Dkt. No. 49, at ¶ 35; Dkt. No. 51-9, at 38-39). Plaintiff testified that he believes the asphalt was added approximately two months after his fall. (Dkt. No. 51-8, at 91).[4]

Separately from the foregoing incident, Plaintiff claims that on or about February 5, 2016, and again approximately one year later, his wrist was injured when the exterior door to Dr. Harris's office within Claxton-Hepburn's portion of the Premises shut on him as he attempted to open it. (Dkt. No. 51-2, at ¶ 15). Plaintiff claims that the Premises lacks automatic doors, and that the manually operated exterior door that caused his injury closes too quickly for him to operate safely while sitting in his wheelchair. (*Id.* at ¶ 16). Plaintiff alleges that, as with his concerns about the wheelchair ramp, he raised his concerns about the door to Dr. Harris and his receptionist on numerous occasions prior to his accidents, but no changes were made. (*Id.* at ¶ 17).

## III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see*

[4] River Real Estate disputes Plaintiff's contention, claiming that the asphalt was added in 2019, several years after Plaintiff's accident. (Dkt. No. 49, at ¶ 36). However, River Real Estate cites to no evidence to support its contention, (*id.*), and in his February 2020 deposition, Dr. Brandy testified that he believed that the asphalt was added "several years ago," though he did not recall specifically when. (Dkt. No. 51-9, at 38). In any event, the exact timing of the addition of the asphalt is immaterial to the Court's decision, as it is undisputed that the asphalt was added at some point after Plaintiff's accident.

*also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (summary judgment appropriate where the nonmoving party fails to "'come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on' an essential element of a claim" (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010))).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323-24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986) (quoting *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)). Upon cross-motions for summary

judgment, the Court must "in each case constru[e] the evidence in the light most favorable to the non-moving party." *Krauss*, 517 F.3d at 621-22; *see also Heublein*, 996 F.2d at 1461.

## IV. RIVER REAL ESTATE AND CLAXTON-HEPBURN'S MOTIONS FOR SUMMARY JUDGMENT

River Real Estate moves for partial summary judgment dismissing all of Plaintiff's claims regarding the exterior door at the Premises, on the grounds that: "1) it is undisputed that [Claxton-Hepburn] was responsible for the door at issue, and 2) Plaintiff never produced any evidence—expert or otherwise—to suggest the door at issue was not compliant with the [ADA]." (Dkt. No. 53-2, at 1-2). Plaintiff does not oppose River Real Estate's motion. (Dkt. No. 58, at ¶ 4).[5] Therefore, River Real Estate's motion for partial summary judgment is granted, and Plaintiff's claims related to the Premises' exterior door are dismissed with prejudice.

Claxton-Hepburn also moves for summary judgment dismissing River Real Estate's third-party complaint in its entirety. (Dkt. No. 48, at 2). River Real Estate's third-party complaint alleges only that Claxton-Hepburn, not River Real Estate, was responsible for constructing, installing and controlling the exterior door of the Premises, and that Claxton-Hepburn is therefore liable for any damages River Real Estate incurs on account of Plaintiff's claims related to the exterior door. (Dkt. No. 30, at ¶¶ 10-11). River Real Estate has never alleged that Claxton-Hepburn bears any responsibility, in whole or in part, for any injuries Plaintiff sustained from the width of the elevated ramp or the placement of the planter at the Premises. Furthermore, in its

[5] In his own motion for summary judgment—which was filed before his concession that he is not opposing River Real Estate's motion—Plaintiff included arguments that the Premises "lacks automatic doors" and that the Premises' exterior door "closes too quickly for [Plaintiff] to operate safely while sitting in his wheelchair" in violation of the ADA. (Dkt. No. 51-2, at ¶¶ 15-17; Dkt. No. 51-3, at 13-15). However, Plaintiff cited to no authority supporting the proposition that the lack of automatic doors, by itself, violates the ADA, nor did Plaintiff cite any record evidence suggesting that the exterior door does not otherwise meet the requirements of the relevant ADA regulations. (*Id.; see also* U.S. Dep't of Justice 2010 ADA Standards for Accessible Design § 404.2). In any event, through his subsequent decision not to oppose River Real Estate's motion, Plaintiff has chosen to abandon his claims regarding the Premises' exterior door.

opposition to Claxton-Hepburn's motion, River Real Estate "does not dispute that Claxton-Hepburn was not responsible for the sidewalk where [Plaintiff] allegedly fell on August 25, 2015," and concedes that "River Real Estate would not oppose summary judgment in Claxton-Hepburn's favor if this Court dismisses [Plaintiff's] claims regarding" the exterior door. (Dkt. No. 49-1, at 1-2 & n. 1). Because Plaintiff's claims regarding the exterior door are dismissed, and because the parties agree that there is no other basis for liability against Claxton-Hepburn, Claxton-Hepburn's motion for summary judgment is granted, and River Real Estate's third-party complaint against Claxton-Hepburn is dismissed with prejudice in its entirety.

## V. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff moves for summary judgment in his favor with respect to his ADA and NYHRL claims regarding the width of the elevated ramp and the placement of the planter at the Premises. (Dkt. No. 51, at 2). Plaintiff also moves for partial summary judgment on his state-law negligence claim regarding the same issue, seeking summary judgment as to liability while leaving the issue of damages for trial. (*Id.*).[6] River Real Estate opposes Plaintiff's motion. (Dkt. No. 54).[7] The Court heard oral argument regarding Plaintiff's motion on October 20, 2020.[8]

---

[6] As discussed *supra*, while Plaintiff's motion for summary judgment originally included arguments regarding the Premises' exterior door, (Dkt. No. 51-2, at ¶¶ 15-17; Dkt. No. 51-3, at 13-15), Plaintiff abandoned his claims regarding the exterior door when he chose not to oppose summary judgment in River Real Estate's favor on those claims. (Dkt. No. 58, at ¶ 4).

[7] Claxton-Hepburn has also filed an opposition to Plaintiff's motion. (Dkt. No. 55). However, as River Real Estate's third-party complaint against Claxton-Hepburn has been dismissed and there are no remaining causes of action against Claxton-Hepburn by any party, Claxton-Hepburn has no remaining interest in this litigation, and the Court will not consider its opposition.

[8] In the Court's text order scheduling oral argument, the Court directed the parties to be prepared to address whether Plaintiff's claim for injunctive relief under the ADA was moot in light of record evidence suggesting that any ADA violations had been remedied. (Dkt. No. 60).

**A. ADA Claim**

"Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals." *PGA Tour, Inc. v. Martin,* 532 U.S. 661, 674 (2001). "To effectuate its sweeping purpose, the ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)." *Id.* at 675. Plaintiff brings his claim under Title III of the ADA, which provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). To prevail on a Title III claim, Plaintiff must prove: "(1) that [ ]he is disabled within the meaning of the ADA; (2) that defendant[] own[s], lease[s], or operate[s] a place of public accommodation; and (3) that defendant[] discriminated against h[im] by denying h[im] a full and equal opportunity to enjoy the services defendant[] provide[s]." *Rossman v. Dollar Gen. Corp.,* 368 F. Supp. 3d 422, 426 (N.D.N.Y. 2019) (quoting *Camarillo v. Carrols Corp.,* 518 F.3d 153, 156 (2d Cir. 2008)). "Title III's enforcement scheme is modeled after Title II of the Civil Rights Act of 1964, which authorizes declaratory and injunctive relief in civil actions brought by either private individuals or the U.S. attorney general." CHAPTER 3: ENFORCEMENT OF THE AMERICANS WITH DISABILITIES ACT, Reg. Litig. & Disp. Resol. Under ADA: Prac. Guide Impl. 17; *see also* 42 U.S.C. § 12188(a)(1) (same remedies available under Title III of ADA as under Title II of Civil Rights Act of 1964). As such, while a plaintiff proceeding under Title III may seek injunctive and declaratory relief, "[m]onetary relief . . . is not available to private individuals under Title III of the ADA." *Powell v. National Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004).

Plaintiff's ADA claim alleges, in substance, that by placing a large planter on the elevated ramp on the Premises, narrowing Plaintiff's only path to access his physician's office to a width barely larger than his wheelchair, River Real Estate failed to provide him with an accessible route within the meaning of the ADA and its implementing regulations. (Dkt. No. 1, at ¶¶ 11-31; Dkt. No. 51-3, at 9-14). Plaintiff specifically alleges that River Real Estate's actions constituted: (1) "[t]he failure to remove architectural barriers, that are structural in nature, in existing facilities;" and (2) "[w]here an entity can demonstrate that the removal of a barrier is not readily achievable, a failure to make goods, services, facilities, privileges, advantages, or accommodations available through alternative methods insofar as such methods are readily achievable." (Dkt. No. 51-3, at 12 (citing 42 U.S.C. § 12182(b)(2)(A)(iv), (v)). Plaintiff cites to the ADA's implementing regulations, which provide that an accessible route of at least 36 inches in width must be provided from public transportation stops, accessible parking and accessible passenger loading zones, and public streets or sidewalks to the accessible building entrance they serve. (*Id.* at 13 (citing U.S. Dep't of Justice 2010 ADA Standards for Accessible Design §§ 402-03)).

Here, it is undisputed that Plaintiff is disabled within the meaning of the ADA, (Dkt. No. 51-2, at ¶ 1; Dkt. No. 54, at ¶ 1-2), that River Real Estate owns the Premises, (Dkt. No. 51-2, at ¶ 5; Dkt. No. 54, at ¶ 5), that the Premises contains operational physicians' offices and thus constitutes a "public accommodation" as defined in the ADA, (Dkt. No. 51-2, at ¶¶ 7-8, 18, 22; Dkt. No. 54, at ¶¶ 6-9, 18-25; *see also* 42 U.S.C. § 12181(7)(F) (defining "public accommodation" to include the "professional office of a health care provider")), that an agent or employee of River Real Estate placed the planter on the elevated ramp, (Dkt. No. 51-2, at ¶ 26; Dkt. No. 54, at ¶ 26), and that the elevated ramp provided the only path to Dr. Harris's office that

Plaintiff could access with his wheelchair. (Dkt. No. 51-2, at ¶ 10; Dkt. No. 54, at ¶10).[9] Furthermore, while Plaintiff has not submitted evidence regarding the dimensions of the path at issue with or without the planter,[10] during his deposition, he testified that, when he approached Dr. Harris's office on the day of his accident, he had "just" enough room to maneuver past the planter in his wheelchair, which is 24.25 inches wide, that it was a "tight fit," that the "right tire of [his] wheelchair . . . rubbed up against the [planter]," and that he had to "go slow and look to [his] left to make sure [he] was going to stay on the curb." (Dkt. No. 51-8, at 88, 109-110; Dkt. No. 51-10, at 1; Dkt. No. 51-13, at ¶¶ 3, 8). Thus, Plaintiff has presented evidence that, if credited, would establish that whatever the exact width of the path, it was less than the required 36 inches. It is also evident from Plaintiff's testimony that he intends to return to the Premises, as he has regularly seen Dr. Harris for pain treatment at the Premises for the past eight years and plans to continue treatment with Dr. Harris.[11] (Dkt. No. 51-8, at 64, 118; Dkt. No. 51-13, at ¶ 5).

However, the Court need not decide whether the foregoing evidence establishes a prima facie case of *past* discrimination under the ADA. In light of the evidence that the alleged ADA violation has been remedied (as discussed below), his ADA claim, which seeks only declaratory relief and injunctive relief to prevent *future* discrimination, must be dismissed as moot. "A case

---

[9] Paragraph 10 of Plaintiff's Statement of Undisputed Facts states, in relevant part, that the "narrow" ramp "provided the only path between Dr. Harris' office down to the level of the parking lot," citing Plaintiff's deposition testimony, affidavit, and medical records. (Dkt. No. 51-2, at ¶ 10). River Real Estate's response denies Plaintiff's characterization of the ramp as "narrow," but does not deny any other portion of paragraph 10. (Dkt. No. 54, at ¶ 10). Furthermore, River Real Estate nowhere argues, or points to any evidence suggesting, that the Premises had an alternative path between the parking lot and Dr. Harris's office that was accessible to Plaintiff. Therefore, Plaintiff's assertion that the ramp provided the only path to Dr. Harris's office is deemed admitted. *See* L.R. 7.1(a)(3) ("The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert.").

[10] At oral argument, the parties agreed that the width of the ramp was approximately 71 inches wide without the planter.

[11] Indeed, during his deposition in September 2019, Plaintiff testified that he had an appointment scheduled with Dr. Harris at the Premises for the following month. (Dkt. No. 51-8, at 118).

is deemed moot where the problem sought to be remedied has ceased, and where there is 'no reasonable expectation that the wrong will be repeated.'" *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) (quoting *U.S. v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)). While River Real Estate has not challenged Plaintiff's motion for summary judgment on mootness grounds, "the Court has an independent obligation to assure itself that it has the subject matter jurisdiction to decide the matter," and "mootness is an aspect of subject matter jurisdiction that the Court must raise *sua sponte*" even where the parties themselves have not raised it. *Grand Manor Health Related Facility, Inc. v. Hamilton Equities Inc.*, 941 F. Supp. 2d 406, 415 (S.D.N.Y. 2013) (citing *College Std. Mag. v. Student Ass'n of the State Univ. of N.Y.*, 610 F.3d 33, 35 (2d Cir. 2010) (per curiam)). Because "[m]onetary relief . . . is not available to private individuals under Title III of the ADA," *Powell*, 364 F.3d at 86, and thus such a plaintiff may only seek injunctive and declaratory relief, "under certain circumstances, a claim under [Title III of] the ADA can become moot if a defendant remedies the access barrier during the pendency of the litigation." *Bacon v. Walgreen Co.*, 91 F. Supp. 3d 446, 451 (E.D.N.Y. 2015) (citing *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011)). The voluntary removal of an alleged barrier to access may render a Title III claim moot "if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Gropper v. Fine Arts Hous., Inc.*, 12 F. Supp. 3d 664, 670 (S.D.N.Y. 2014) (quoting *Clear Channel Outdoor, Inc. v. City of N.Y.*, 594 F.3d 94, 110 (2d Cir. 2010)).

"In ADA cases involving architectural barriers remedied by structural changes, some courts have found that the conduct reasonably would not recur because the defendants would have no reason to alter the structural changes back." *Rosa v. 600 Broadway Partners, LLC*, 175

F. Supp. 3d 191, 201 (S.D.N.Y. 2016) (citations omitted). "Generally, courts find that, once a defendant voluntarily makes remedial physical alterations to a building, the associated ADA claim is moot . . . Once a defendant embarks on construction to bring its building into compliance, it would be illogical to assume a defendant would expend further funds to reverse the remediation, remove itself from compliance with the ADA, and expose itself to further litigation if there 'is no evidence that Defendant would derive any benefit from the reversion.'" *Thomas v. West*, No. 14-cv-4459, 2018 WL 3768525, at *4, 2018 U.S. Dist. LEXIS 133825, at *11 (S.D.N.Y. Aug. 8, 2018) (citations omitted). By contrast, courts are typically more reluctant to find an ADA claim moot where the defendant's compliance or noncompliance with the ADA "flows from an easily changeable policy." *Rosa*, 175 F. Supp. 3d at 201 (citations omitted).

Here, it is undisputed that, at some time after Plaintiff's accident, the large planter that posed a barrier to Plaintiff's access was removed. (Dkt. No. 51-2, at ¶ 27; Dkt. No. 54, at ¶ 27; Dkt. No. 51-9, at 41-42, 66). It is doubtful whether this alone would moot Plaintiff's claim, since "nothing would prevent [River Real Estate] from [putting the planter back] the next day" following the Court's dismissal of Plaintiff's claim, and thus removal of the planter "is not the sort of permanent physical change or change that inherently cannot be undone that courts have found to foreclose a reasonable chance of recurrence." *Rosa*, 175 F. Supp. 3d at 202 (quoting *Young v. District of Columbia Housing Auth.*, 31 F. Supp. 3d 90, 97 (D.D.C. 2014)); *see also Thomas*, 2018 WL 3768525, at *4, 2018 U.S. Dist. LEXIS 133825, at *13 ("While the removal of merchandise [that posed a barrier to access] is arguably a physical change, it is better characterized as a policy change—merchandise may easily be moved . . . based only on the instructions of management"); *Eiden v. Home Depot USA, Inc.*, No. 04-cv-977, 2006 WL 1490418, at *12-13, 2006 U.S. Dist. LEXIS 38423, at *40-42 (E.D. Cal. May 26, 2006)

(reviewing case law on when movable obstructions, such as shopping carts, may be considered a "barrier" for Title III purposes, and noting Justice Department regulations that "an isolated instance of placement of an object in an accessible route is not a violation if the object is promptly removed," but that "regular use of an accessible route for storage of supplies would violate Title III").

However, it is undisputed that asphalt has been added to make the previously elevated wheelchair-accessible ramp level with the parking lot. (Dkt. No. 51-8, at 87-88, 91, 108, 136-38; Dkt. No. 51-9, at 38-39, 98). The addition of the asphalt, which provides a smooth transition between the parking lot and the wheelchair ramp and expands the "accessible route" to the Premises beyond the 36 inches required by the ADA, resolves the alleged defect. (Dkt. No. 51-8, at 87-88 (Plaintiff's deposition testimony, after reviewing recent pictures of the Premises, that the asphalt that has been added creates a "smooth transition" from the parking lot to the ramp and is the "way [the Premises] should have been when it was built")). Indeed, Plaintiff's counsel conceded at oral argument that there is no evidence in the record suggesting that, after addition of the asphalt and removal of the Planter, the Premises are *currently* not compliant with the ADA. Crucially, in contrast to removal of the planter, the addition of asphalt constitutes a "permanent structural alteration[]" that "mak[es] recurrence of the alleged violations highly unlikely." *Thomas v. Ariel West*, 242 F. Supp. 3d 293, 305 (S.D.N.Y. 2017); *see also Rosa*, 175 F. Supp. 3d at 203 ("Given that modification of the sales counter [to make it accessible] likely required some expense, and that there would be no apparent benefit to returning it to its prior state, the Court concludes that Plaintiff's claim is moot as to the sales counter"). Because of this permanent structural change to the Premises, "the problem sought to be remedied has ceased, and . . . there is 'no reasonable expectation that the wrong will be repeated.'" *Prins*, 76 F.3d at 506

(quoting *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975)).[12] Therefore, Plaintiff's ADA claim for injunctive relief must be dismissed as moot.

Because Plaintiff's claim for injunctive relief under the ADA is moot, his claim for declaratory relief under the ADA must be dismissed as well. *See, e.g.*, *Scheiner v. ACT Inc.*, No. 10-cv-0096, 2013 WL 685445, at *3, 2013 U.S. Dist. LEXIS 25204, at *9-10 (E.D.N.Y. Feb. 24, 2013) (rejecting the plaintiff's argument that her claim for declaratory relief under Title III of the ADA preserves an "actual controversy" after finding her claim for injunctive relief is moot, as "[f]ederal district courts 'have no jurisdiction to render declaratory judgments when the underlying questions are moot or otherwise non justiciable' (quoting *Pancake v. McCarthy*, 806 F. Supp. 378, 379 (E.D.N.Y. 1992))); *Brenchley v. Vill. of Phoenix,* No. 01-cv-190, 2005 WL 2437027, at *4, 2005 U.S. Dist. LEXIS 48212, at *12-13 (N.D.N.Y. Sept. 30, 2005) ("It is undisputed that any apparent violation of the ADA by the Village has been definitively remedied to the satisfaction of the Department of Justice. Consequently, plaintiff's request for declaratory relief, to the extent he is deemed to have raised one, must be dismissed.").

Because Plaintiff's ADA claim is dismissed on mootness grounds, the Court does not address the question of whether, based on the evidence proffered by both Plaintiff and River Real Estate, any genuine dispute of material fact exists with respect to the merits of Plaintiff's ADA claim.

---

[12] It appears that the asphalt may have been added at the request of Claxton-Hepburn, and that Claxton-Hepburn may have even paid for the addition. (Dkt. No. 51-9, at 38-39). However, even if true, this is immaterial to the Court's mootness analysis. The question of who added or paid for the asphalt is irrelevant to the essential fact: that the added asphalt constitutes a permanent structural change to the Premises that River Real Estate cannot now undo without incurring further expense.

### B. State Law Claims

Having found that Plaintiff's claim for injunctive relief under the ADA, which formed the basis for the Court's federal question jurisdiction, is moot, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law negligence and NYHRL claims. *See* 28 U.S.C. § 1367(c)(3) (providing that a district court "may decline to exercise supplemental jurisdiction over [pendent state law claims] if . . . the district court has dismissed all claims over which it has original jurisdiction"); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").

At oral argument, Plaintiff's counsel argued that, even if it were to dismiss Plaintiff's ADA claim as moot, the Court should nonetheless exercise supplemental jurisdiction over Plaintiff's state law claims. Plaintiff's counsel cited the burden to Plaintiff of having to restart the process of litigating his claims in state court after more than two years of litigation and the completion of discovery in this Court. While the Court appreciates Plaintiff's position, after careful consideration, the Court finds that this is the "usual case" in which, given the dismissal of Plaintiff's federal law claims before trial, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state claims. *Id.*

This is not a case where Plaintiff's federal claims have been dismissed on the eve of trial, such that requiring Plaintiff to refile his state law claims in state court would cause unusually high and unnecessary burden, delay and waste of judicial resources. *Cf., e.g.*, *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 86 (2d Cir. 2018) (finding abuse of discretion in the district court's decision not to exercise supplemental jurisdiction where federal claims were

dismissed, and supplemental jurisdiction revoked, "one day prior to the final pretrial conference and a week before the scheduled trial date"); *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1191-92 (2d Cir.1996) (finding no abuse of discretion in the district court's exercise of supplemental jurisdiction where the dismissal of the federal claim had occurred just nine days before the scheduled start of trial); *Raucci v. Town of Rotterdam*, 902 F.2d 1050, 1055 (2d Cir. 1990) (finding no abuse of discretion in the district court's exercise of supplemental jurisdiction where, by the time the federal claims were dismissed, discovery had been completed, the court had decided three dispositive motions, and the case was ready for trial). The Court acknowledges that this case is at a relatively advanced stage and discovery has been completed. However, courts routinely decline to exercise supplemental jurisdiction over related state law claims after dismissing ADA claims at the summary judgment stage, and this case presents no circumstances sufficiently unique or compelling to depart from the usual rule. *See, e.g.*, *Bacon*, 91 F. Supp. 3d at 453; *Gershanow v. County of Rockland*, No. 11-cv-8174, 2014 WL 1099821, at *5, 2014 U.S. Dist. LEXIS 37004, at *18-23 (S.D.N.Y. March 20, 2014); *Panzica v. Mas-Maz, Inc.*, No. 05-cv-2595, 2007 WL 1732123, at *10, 2007 U.S. Dist. LEXIS 42171, at *28-29 (E.D.N.Y. June 11, 2007). Furthermore, the work done over the past several years in this case need not go to waste, as the parties may utilize the discovery taken and record developed in *this* Court to litigate Plaintiff's claims in state court. *See, e.g., Allard v. Arthur Anderson & Co. (U.S.A.)*, 957 F. Supp. 409, 425 (S.D.N.Y. 1997) (declining to exercise supplemental jurisdiction where "[t]he cases at bar are not on the eve of trial" and "[t]he voluminous discovery taken in these cases would not be wasted if the cases were refiled in state court; it would be available for use there"). Indeed, at oral argument, in response to Plaintiff's expressed concerns about burden, counsel to River Real

Estate expressed his belief that that there would be no need for any further discovery in state court, thus expediting the state court proceedings.

Nor is this a case where Plaintiff's state law claims are "closely tied to questions of federal policy" or implicate federal doctrines, as would justify retention of supplemental jurisdiction. *See, e.g.*, *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) (finding no error in district court's decision to exercise supplemental jurisdiction where state law claims implicated federal preemption doctrine). Rather, Plaintiff's NYHRL and state law negligence claims solely present questions involving New York statutory and common law, questions that are "best left to the courts of the State of New York." *Thomas v. Grunberg 77 LLC*, No. 15-cv-1925, 2017 WL 3225989, at *3, 2017 U.S. Dist. LEXIS 104606, at *9 (S.D.N.Y. July 5, 2017) (quoting *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001) (declining to exercise supplemental jurisdiction over NYHRL claims after finding ADA claim moot), *report & recommendation adopted*, 2017 WL 3263141, 2017 U.S. Dist. LEXIS 118962 (S.D.N.Y. July 28, 2017); *see also, e.g.*, *Bacon*, 91 F. Supp. 3d at 453 (declining to exercise supplemental jurisdiction over New York state law claims for injunctive relief and damages after finding ADA claim moot).

Accordingly, Plaintiff's state-law claims against Defendants are dismissed without prejudice to Plaintiff refiling those claims in state court.

## VI. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Third-Party Defendant Claxton-Hepburn's motion for summary judgment (Dkt. No. 48) is **GRANTED** in its entirety;

**ORDERED** that Plaintiff's motion for partial summary judgment (Dkt. No. 51) is **DENIED** in its entirety; and it is further

**ORDERED** that Defendant/Third-Party Plaintiff River Real Estate's motion for partial summary judgment (Dkt. No. 53) is **GRANTED** in its entirety; and it is further

**ORDERED** that all of Plaintiff's claims with respect to the exterior doors at the Premises are **DISMISSED with prejudice** in their entirety; and it is further

**ORDERED** that Plaintiff's claim under Title III of the ADA with respect to the width of the Premises' wheelchair accessible ramp or sidewalk and placement of the planter is **DISMISSED without prejudice** for lack of subject matter jurisdiction because it is moot; and it is further

**ORDERED** that Plaintiff's state-law negligence claim and claim under the NYHRL with respect to the width of the Premises' wheelchair accessible ramp or sidewalk and placement of the planter are **DISMISSED without prejudice** to refiling in state court because the Court declines to exercise supplemental jurisdiction over these claims; and it is further

**ORDERED** that Defendant/Third-Party Plaintiff River Real Estate's Third-Party Complaint (Dkt. No. 30) is **DISMISSED with prejudice** in its entirety; and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**

Dated: October 22, 2020
Syracuse, New York

Brenda K. Sannes
U.S. District Judge